UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

BRANDON L. CALLIER,                     §
                                        §
        *Plaintiff,*                    §
                                        §
v.                                      §        No. 3:25-CV-00231-LS-MAT
                                        §
AMERICAN AUTO GROUP LLC d/b/a           §
ALL AMERICAN AUTO CARE,                 §
a California limited liability company. §
                                        §
        *Defendant.*                    §

<u>REPORT AND RECOMMENDATION</u>

Before the Court is Plaintiff Brandon Callier's (Plaintiff's) "Plaintiff's Motion for Default Judgment and Permanent Injunction" (ECF No. 18) ("Motion"), filed on March 25, 2026. Plaintiff brought this lawsuit against American Auto Group LLC, for violations of the Telephone Consumer Protection Act ("TCPA") and the Texas Business and Commerce Code ("TBCC"). Pl.'s Class Action Compl. Demand for Jury Trial at 6-7, ECF No. 1. Although American Auto Group was served with a summons and complaint, to date, it has not answered Plaintiff's Complaint or otherwise appeared in this case. Plaintiff now moves the Court to enter a default judgment and a permanent injunction. On March 30, 2026, United States District Judge Leon Scyhdlower referred the motion to the undersigned for review and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Court Rule CV-72. For the reasons that follow, the Court **RECOMMENDS** Plaintiff's Motion be **GRANTED in part, and DENIED in part**.

## I.    BACKGROUND

### A.  Factual Background

This case arises from alleged violations of the TCPA, 47 U.S.C. § 227, and regulations promulgated thereunder, and TBCC §§ 302.101 and 305.053. Pl.'s Class Action Compl. Demand

1

for Jury Trial, ¶¶ 12-48, ECF No. 1. In his complaint, Plaintiff requested "[a]n award of $1,500 per text message in statutory damages arising from § 227(c) for each intentional violation" *id.* at 8, and "[a]n award of $5,000 in statutory damages arising from each violation of the Texas Bus. & Com. Code § 305.053," *id.*, and "[a]n award of $5,000 in statutory damages arising from each violation of the Texas Bus. & Com. Code § 302.101." *Id.* Later, in his Motion for Default Judgment, Plaintiff requested $3,000 for two violations of the TCPA, 47 U.S.C. §227(c)(5)(C) at $1,500 per violation, $3,000 for two violations of Texas Bus. & Com. Code § 305.053(c) at $1,500 per violation, and $10,000 for two violations of Texas Bus. & Com. Code § 302.302(a) at $5,000 per violation. Motion, 6.

Plaintiff asserts that "Defendant sent Plaintiff two unsolicited text messages on May 4, 2025 and May 20, 2025, each promoting Defendant's Vehicle Service Contracts ("VSCs")." *Id.* at 2. Plaintiff asserts he received these calls while his telephone number is registered on the National Do Not Call ("DNC") List. *Id.* Plaintiff asserts he did not request either text message nor were they sent for emergency purposes. Pl. Decl., ECF No. 18-2, ¶¶4-6.

**B.  Procedural History**

Defendant was served with the summons and Complaint on January 7, 2026. *See* ECF No. 15. Defendant had twenty-one days from service to answer. Fed. R. Civ. P. 12(a)(1)(A)(i). Defendant never answered. Plaintiff filed a request for entry of default against Defendant on January 30, 2026. *See* ECF No. 16. Entry of default against Defendant American Auto Group LLC was filed on February 2, 2026. *See* ECF No. 17. Plaintiff then filed this motion, moving for default judgment under Rule 55(b)(2) of the Federal Rules of Civil Procedure and for entry of a permanent injunction prohibiting Defendant from engaging in further violations of the TCPA. *See* ECF No. 18. Defendant has not responded to the motion for default judgment or otherwise

appeared in this matter. Plaintiff's Complaint contains class action allegations, but Plaintiff has not moved for class certification, and instead seeks, with the Motion for Default Judgment, a judgment on only his individual claims.

## II.    LEGAL STANDARD

### A.  Default Judgment

Rule 55 of the Federal Rules of Civil Procedure governs entry of default and default judgment.  In ruling on a motion for default judgment, courts generally analyze the following three issues: (1) the procedural propriety of default judgment, (2) the substantive merits of the plaintiff's claims, and (3) the appropriate form of relief.  *See RLI Ins. Co. v. 2 G Energy Sys., LLC*, 581 F. Supp. 3d 817, 823-26 (W.D. Tex. 2020); *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008).

Regarding the procedural propriety of the default, a defendant defaults if he or she fails to timely respond to the complaint.  Fed. R. Civ. P. 55(a); *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).  When default is shown "by affidavit or otherwise," the clerk of the court "must enter the party's default." Fed. R. Civ. P. 55(a).  After entry of default, the plaintiff may seek default judgment under Rule 55(b), though default judgment is a "drastic remedy" reserved for appropriate cases. *Guadian v. United Tax Def. LLC*, No. EP-23-CV-00349-KC, 2024 WL 140249, at *2–3 (W.D. Tex. Jan. 12, 2024) (citing *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989)).

### a.  *Lindsey* Factors

In deciding whether default judgment is procedurally proper, the court considers the following six factors outlined in *Lindsey v. Prive Corporation*:

[1] whether material issues of fact are at issue, [2] whether there has been substantial prejudice, [3] whether the grounds for default are clearly established,

[4] whether the default was caused by a good faith mistake or excusable neglect, [5] the harshness of a default judgment, and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

161 F.3d 886, 893 (5th Cir. 1998).

As to the substantive merits of the default judgment the court accepts the plaintiff's well-pleaded allegations as true, except regarding damages. *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *U.S. for Use of M-CO Const., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Default judgment is appropriate only if the pleadings provide a "sufficient basis" for the judgment. *Nishimatsu*, 515 F.2d at 1206. "In addition to the complaint, the court may consider evidence that 'simply add[s] factual details [and thereby] fleshe[s] out [the plaintiff's] claim' or 'serve[s] as further proof' of the plaintiff's allegations." *Hartford Life & Accident Ins. Co. v. Cuellar*, EP-17-CV-00096-DCG, 2018 WL 11346753, at *1 (W.D. Tex. July 25, 2018) (citing *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 500 (5th Cir. 2015)).

In other words, "a defendant's default does not in itself warrant the court in entering a default judgment …. The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Nishimatsu*, 515 F.2 at 1206. Courts apply the standard set in Federal Rule of Civil Procedure 8 for the sufficient basis inquiry.[1] Courts in the Fifth Circuit have distinguished between the Rule 8 standard arising in the context of a Rule 12(b)(6) motion and a default-judgment context. *Wooten*, 788 F.3d at 498; *see also id.* n.3 ("Although most cases

---

[1] Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this requirement is "to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (footnote and citations omitted). "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

addressing Rule 8 arise in the context of a Rule 12(b)(6) motion to dismiss, . . . we decline to import Rule 12 standards into the default-judgment context.").

Finally, as to appropriate form of relief, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).  The court may conduct a hearing on a default judgment motion, as needed, to: "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).  A hearing on damages is required "unless the amount claimed is a liquidated sum or one capable of mathematical calculation." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

Whether default judgment is granted is discretionary with the court.  "A party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996).  Rather, the district court "has the discretion to decline to enter a default judgment." *Lindsey*, 161 F.3d at 893.

The Court must establish that jurisdiction is proper.  Before it may enter default judgment, "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) (quoting *Williams v. Life Savings & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999) (explaining that federal courts have independent duty to examine their own subject matter jurisdiction).

## B.  Permanent Injunction

The TCPA and Texas Bus. & Com. Code § 305.053 permit a plaintiff to seek an injunction to prevent telemarketing calls. *See* 47 U.S.C. § 227(b)(3); Tex. Bus. & Com. Code § 305.053(a). The standard for issuing a permanent injunction is "essentially the same" as that for a

preliminary injunction. *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987). Permanent injunctions are extraordinary remedies not lightly given. *Posada v. Lamb Cnty. Tex.*, 716 F.2d 1066, 1070 (5th Cir. 1983). To prevail, the movant must show: (1) actual success on the merits, (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party, and (4) that granting the injunction is not adverse to the public interest. *See Harris Cnty. v. CarMax Auto Superstores Inc.*, 177 F.3d 306, 312 (5th Cir. 1999).

The decision to grant an injunction, and the proper scope of any injunctive relief, is committed to the sound discretion of the court. *Frostie Co. v. Dr. Pepper Co.*, 361 F.2d 124, 126-27 (5th Cir. 1996). Because the ultimate purpose of an injunction is to prevent future harm, "a petitioner must show a clear threat of continuing illegality portending immediate harmful consequences irreparable in any other manner." *Posada*, 716 F.2d at 1070. When a statute authorizes injunctive relief, it is presumed that the legislative branch intended the courts to exercise their traditional equitable discretion in deciding whether to grant an injunction. *Shields v. Gawk Inc.*, No. 3:18-CV-00150, 2019 WL 1787781, at *6 (S.D. Tex. Apr. 24, 2019) (citing *United States v. Marine Shale Processors*, 81 F.3d 1329, 1360 (5th Cir. 1996)).

### III.    DISCUSSION

**A.  Court's Jurisdiction**

#### a.  *Subject Matter Jurisdiction*

As an initial matter, the Court considers whether it has subject-matter jurisdiction and personal jurisdiction over the defendant. *Guadian*, 2024 WL 140249, at *2–3 (citing *Drew v. Lexington Consumer Advoc.*, No. 16-cv-00200-LB, 2016 WL 9185292, at *2 (N.D. Cal. Aug. 11, 2016), *report and recommendation adopted sub nom. Drew v. Lexington Consumer Advoc., LLC*,

No. C 16-00200 SBA, 2016 WL 9223901 (N.D. Cal. Sept. 2, 2016)). The Court has subject-matter jurisdiction over Plaintiff's TCPA claims because the TCPA is a federal statute. *See* 28 U.S.C. § 1331. The Court also has supplemental jurisdiction over Plaintiff's TBCC claims because they arise from the same nucleus of operative facts. *See* 28 U.S.C. § 1367(a).

### a.   *General Personal Jurisdiction*

There are two forms of personal jurisdiction: general and specific. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017). General jurisdiction for a corporation exists within a state where a corporation "is fairly regarded as at home." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). Generally, a corporation is "at home" only in its place of incorporation or principal place of business." *Frank v. P.N.K. (Lake Charles) LLC*, 947 F.3d 331, 336 (5th Cir. 2020). Because Defendant is alleged to be "a limited liability corporation organized and existing under the laws of California," the Court lacks general personal jurisdiction. *See* Pl.'s Compl. at ¶8.

### b.   *Specific Personal Jurisdiction*

Specific jurisdiction exists where the suit arises out of the defendant's contacts with the forum. *Bristol-Myers Squibb*, 582 U.S. at 262. "[A] federal court may assert personal jurisdiction if the state long-arm statute permits jurisdiction and the exercise of such jurisdiction would not violate due process." *Conn Appliances, Inc. v. Williams*, 936 F.3d 345, 347 (5th Cir. 2019) (internal quotes and citation omitted). Minimum contacts with the forum are sufficient for personal jurisdiction when the contacts would reasonably render litigation in that forum foreseeable. *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985) (describing the "critical" foreseeability at issue as whether the defendant "should reasonably anticipate being haled into court" in that forum). Because the Texas long-arm statute extends to the limits of federal due

process, the Court considers whether Defendant purposefully availed itself of Texas and whether exercising jurisdiction would comport with traditional notions of fair play and substantial justice. *Rusesabagina v. GainJet Aviation, S.A.*, No. 24-50630, at *4 (5th Cir. Sept. 18, 2025) (citing *Johnston v. Multidata Sys. Intern. Corp.*, 532 F.3d 602, 609 (5th Cir. 2008)). "[T]he Fifth Circuit has repeatedly held that intentionally directing misrepresentations over the phone to recipients over the phone to recipients in the forum gives rise to sufficient minimum contacts for specific personal jurisdiction." *Federal Trade Comm'n v. Educare Centre Services, Inc.*, 414 F. Supp.3d 960, 970 (W.D. Tex. 2019) (citing *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 491 (5th Cir. 2018)).

Exercising personal jurisdiction over Defendant American Auto Group LLC comports with traditional notions of fair play and substantial justice. In assessing whether the exercise of personal jurisdiction is reasonable, the Fifth Circuit considers five factors:

> (1) the burden on the nonresident defendant of having to defend itself in the forum, (2) the interests of the forum state in the case, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in the most efficient resolution of controversies, and (5) the shared interests of the states in furthering fundamental social policies.

*Guadian*, 2024 WL 140249, at *4 (quoting *Rogers v. Health Ctr. of Lake City, Inc.*, 636 F. Supp. 3d 758, 771 (W.D. Tex. 2022)). The *Rogers* court, applying these factors, concluded that "its exercise of personal jurisdiction over a TCPA defendant was reasonable because 'Texas has an interest in litigation enforcing its telephone consumer protection laws, and [the] [p]laintiff would be inconvenienced if required to litigate his claims in [the defendant's] preferred state.'" *Id.* (quoting *Rogers*, 636 F. Supp. 3d at 771). The court further observed that enforcement of such laws "could be frustrated if plaintiffs as a group were forced to travel to the defendants' preferred

state." *Id.* (quoting *Rogers*, 636 F. Supp. 3d at 771). The same considerations apply here, and Defendant has not demonstrated that the exercise of personal jurisdiction would be unreasonable.

Here, specific jurisdiction arises out of Defendant's intentional contacts with this forum. Plaintiff alleges that Defendant intentionally directed text messages to him in Texas. Pl.'s Compl. ¶10 ("This Court has specific personal jurisdiction over Defendant because Defendant caused the violating text messages to be sent to Plaintiff in this District.").

## B.  Service of Process and Venue

Defendant was properly served. Defendant American Auto Group LLC was properly served with process via registered agent on January 7, 2026, and therefore had the opportunity to respond but did not. ECF No. 15. Under Fed. R. Civ. P. 4(e)(1), a corporation may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." California law allows service on the Secretary of State following a court order "if, by reasonable diligence, a plaintiff cannot serve summons on a corporation by another method." Cal. Corp. Code § 1702(a) (2023). On January 1, 2026, United States District Judge Leon Schydlower granted Plaintiff's motion for alternative service to "serve Defendant under the California Corporation Code's terms by hand delivery to the California Secretary of State, 'or to any person employed in the Secretary of State's office in the capacity of assistant or deputy.'" ECF No. 12 at 2 (citing Cal. Corp. Code § 1702(a) (2023)).

Plaintiff's process server served the Complaint, summons, and other initiating papers to American Auto Group LLC by serving California Deputy Secretary of State Kathryn Ichiho at the address of c/o CA Secretary of State, 1500 11th Street, Room 390, Sacramento, CA 95814.

9

ECF No. 15. Thus, Plaintiff effected service under Rule 4(e)(1). Defendant had the opportunity to respond but did not.

## C. Procedural Propriety Under the *Lindsey* Factors

Next, the Court turns to the three-part test to determine whether a default judgment should be entered against Defendant American Auto Group LLC. The first step is to review whether the entry of default judgment is procedurally warranted considering the six *Lindsey* factors. *See Lindsey*, 161 F.3d 886, 893 (5th Cir. 1998). Default judgment against Defendant in the instant case is procedurally appropriate. Because Defendant defaulted and filed no responsive pleadings, there are no genuine issues of fact at issue here. *Guadian*, 2024 WL 140249, at *2-3 (citing *Cunningham v. Greenstar Cap. Sols., LLC*, No. 4:18-CV-000161-ALM-CAN, 2018 WL 4572711, at *3 (E.D. Tex. Aug. 1, 2018). Second, Plaintiff has been prejudiced and will continue to be prejudiced by the delay in this case due to Defendant's failure to timely respond, which threatens to bring the entire case to a halt. *See Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011) (citing *Lindsey*, 161 F.3d at 893) ("failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff[s'] interests."). Third, the grounds for default are "clearly established" because Defendant has not responded to the summons, the entry of default, or the motion for default judgment. *See J.D. Holdings, LLC v. BD Ventures, LLC*, 766 F. Supp. 2d 109, 113 (D.D.C. 2011) (finding default judgment appropriate "if defendants are 'totally unresponsive' and the failure to respond is 'plainly willful, as reflected by the parties' failure to respond either to the summons and complaint, the entry of default, or the motion for a default judgment"). Fourth, there is no evidence that Defendant's default was caused by a good faith mistake or excusable neglect. Fifth, default judgment against Defendant would not be unduly harsh, given that

10

Defendant has been given notice and opportunity to respond to this action. Finally, the Court is not aware of any basis on which a court would think itself obligated to set aside Defendant's default. Therefore, because all the *Lindsey* factors are satisfied, the Court finds default judgment against Defendant American Auto Group LLC, is procedurally appropriate.

## D.  Substantive Merits

The second step in Rule 55's three-part test to determine whether a default judgment should be entered is whether there is a sufficient basis in the pleadings for the judgment. Due to the entry of default, Defendant is deemed to have admitted the allegations outlined in the Complaint. *See Nishimatsu*, 505 F.2d at 1206 (explaining that "the defendant, by his default, admits the plaintiff's well-pleaded allegations of fact. . . ."). Nonetheless, the Court must review the pleadings to determine whether they provide a sufficient basis for Plaintiff's claim for relief. *See id.*

### 1.    *TCPA § 227(c)(2) Do Not Call Claim*

Section 227(c)(2) of the TCPA grants the Federal Communications Commission ("FCC") rulemaking authority to "protect residential telephone subscriber's privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). This subsection creates a private right of action for "a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations" promulgated by the FCC under the subsection. *Id.* § 227(c)(5). One heavily litigated issue arises from technological developments in electronic communication that were not mentioned in the TCPA because they did not exist. The section below discusses the advent of cellular telephones and text messaging and how the courts have addressed them under the TCPA.

The FCC Regulation that Plaintiff relies on, 47 C.F.R. § 64.1200(c)(2), prohibits unsolicited calls to "residential telephone subscribers" who have registered on the "do-not-call registry" that the FCC maintains. This regulation applies to "telephone solicitations or telemarketing calls or text messages" made to wireless telephone numbers. 47 C.F.R. § 64.1200(e). Together, Section 227(c)(2) of the TCPA and FCC regulation 47 C.F.R. § 64.1200(c)(2) require Plaintiff to allege that he is a "residential telephone subscriber" registered on the do-not-call registry and that Defendants made more than one unsolicited call or text message within a twelve-month period.

Here, Plaintiff sufficiently pleads facts under Rule 8 to support entering a default judgment on his TCPA Do-Not-Call claim. He alleges that Defendant sent him two unsolicited text messages on May 5, 2025 and May 20, 2025, each marketing Defendant's Vehicle Service Contracts. Pl.'s Compl. ¶¶16-18.

Courts in the Fifth Circuit have recognized that a plaintiff adequately states a claim under § 227(c)(5) by alleging repeated calls made without compliant do-not-call procedures or to a number listed on the national registry, and that a defendant's default admits such regulatory violations. *See Callier*, 2021 WL 2742766, at 4–5.

### a)    *Applicability of the TCPA to Cellphones*

Although courts have differed on whether a cellular telephone qualifies as a "residential telephone" under § 64.1200(c), there is no binding precedent foreclosing such claims, and courts have held that a cellular number may qualify where the plaintiff alleges it is used for residential purposes. *See Guadian*, 2024 WL 140249, at *2–3; *Myrick v. Adapthealth, LLC*, No. 6:22-CV-00484-JDK, 2023 WL 5162396, at *2–3 (E.D. Tex. June 26, 2023), *report and recommendation adopted*, 2023 WL 4488848 (E.D. Tex. July 12, 2023). Consistent with FCC guidance extending

TCPA protections to cellular phones, courts within this Circuit have concluded that such allegations are sufficient to state a claim under § 227(c)(5). *See Guadian*, 2024 WL 140249, at 3 (citing *In re Rules & Reguls. Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, 14039 (2003)).

### b) *Applicability of the TCPA to Text Messages*

Recent TCPA jurisprudence also reflects differing approaches among district courts regarding whether text messages constitute "telephone calls" subject to the statute's Do-Not-Call provisions under 47 U.S.C. § 227(c). In *Jones v. Blackstone Medical Services, LLC*, the Central District of Illinois dismissed a TCPA class action, holding that § 227(c)'s plain text, which was enacted before the advent of text messaging, does not encompass text messages, notwithstanding prior FCC guidance to the contrary. No. 1:24-cv-01074, 2025 WL 2042764, at *3–5 (C.D. Ill. July 21, 2025). That court relied heavily on the Supreme Court's recent decisions in *McLaughlin Chiropractic Assocs. v. McKesson Corp.*, 145 S. Ct. 2006 (2025), and *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024), which rejected *Chevron* deference and clarified that district courts are not bound by agency interpretations but must instead apply ordinary tools of statutory construction.

In contrast to *Blackstone Medical Services*, most other courts hold that § 227(c) applies to text messages. *See Duron v. Kings Cap. Holding LLC*, No. 3:25-cv-00149-DCG, 2026 WL319779, at *6 (W.D. Tex. Jan. 13, 2026); *Wilson v. Skopos Fin., LLC*, No. 6:25-cv-00376-MC, 2025 WL 2029274, at *4 (D. Or. July 21, 2025). A number of cases rely heavily on FCC guidance when finding that § 227 (c) covers text messages. *See Mujahid v. Newity, LLC*, No. 25 C 8012, 2025 WL 3140725, at *3 (N.D. Ill. Nov. 10, 2025) (citing *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 155 (2025) ("District courts are not bound by the

agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation."). "The FCC has stated that § 227(b) 'encompass[es] both voice calls and text calls.'" *Sagar v. Kelly Auto. Group, Inc.*, 2021 WL 5567408, at \*4 (D. Mass. Nov. 29, 2021) (citing *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C.R. 14014, 14115 (2003)). The FCC has stated that § 227(c) includes text messages. *See In the Matter of Emanuel "Manny" Hernandez*, 2018 WL 6830220, at \*1 (F.C.C. Dec. 21, 2018) (concluding that Hernandez violated § 227(c) because it is 'illegal for persons or entities, including advertisers and marketers, to make marketing calls to telephone numbers listed on the [do-not-call registry and this] prohibition includes both voice calls and text messages.')." *Id.* Numerous cases agree with FCC guidance. *See, e.g.*, *Sagar v. Kelly Auto Group, Inc.*, No. 21-cv-10540-PBS, 2021 WL 5567408 (N.D. Ill. Nov. 29, 2021) (relying on FCC guidance); *Pariseau v. Built USA, LLC*, 619 F. Supp. 3d 1203 (D. Colo. 2022) (relying on FCC guidance and statutory interpretation); *Mujahid*, 2025 WL 3140725, at \*3 (relying on FCC guidance, textual analysis, and statutory interpretation); *Hudson v. Palm Beach Tan, Inc.*, No. 1:23-CV-486, 2024 WL 4190513, at \*6–8 (M.D.N.C. Aug. 12, 2024), *report and recommendation adopted*, 2024 WL 4188310 (M.D.N.C. Sept. 13, 2024) (relying on FCC guidance and caselaw).

Additionally, appellate authority also supports this interpretation. The Ninth Circuit has held that a phone owner or subscriber who receives unsolicited telemarketing text messages has standing under §227(c) by virtue of having their number listed on the National Do-Not-Call Registry. *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023) ("As Hall alleges that she was the owner and subscriber of a cell phone number on the Do-Not-Call Registry that received unsolicited text messages in violation of the TCPA, she has stated an injury in fact

14

sufficient to satisfy Article III."). Other courts have similarly concluded that the receipt of unsolicited telemarketing text messages constitutes a cognizable injury under the TCPA. *Hudson v. Palm Beach Tan, Inc.,* No. 1:23CV486(WO)(JEP), 2024 WL 4190513, at *6–8 (M.D.N.C. Aug. 12, 2024), *report and recommendation adopted*, No. 1:23-CV-486, 2024 WL 4188310 (M.D.N.C. Sept. 13, 2024); *Williams v. Myler Disability, LLC*, No. 3:20-cv-00275-FDW-DCK, 2020 WL 6693134, at *6 (W.D.N.C. Nov. 12, 2020).

The Court is persuaded by the reasoning of the overwhelming majority of cases confirming cell phones are residential phones for purposes of the act and more importantly, that text messages are actionable under §227(c)(5).

### 2.    *Violation of TBCC § 305.053*

Section 305.053 of the Texas Business and Commerce Code is coextensive with the TCPA. It provides a cause of action for violations of the TCPA, permitting a person who receives a communication that violates the TCPA to bring a claim under Texas law against the person who originated the communication. The statute provides that:

> (a) A person who receives a communication that violates 47 U.S.C. Section 227 . . .  may bring an action in this state against the person who originates the communication for:
> (1) an injunction;
> (2) damages in the amount provided by this section; or
> (3) both an injunction and damages.

Tex. Bus. & Com. Code § 305.053(a).

The Court has already found that American Auto Group LLC violated § 227(c) of the TCPA. Therefore, the Court finds that Plaintiff is also entitled to default judgment on his Section 305.053 claims based on the violation of § 227.

15

### 3.    *Violation of TBCC § 302.101*

TBCC Section 302.101 makes it a violation for "a seller" to "make a telephone solicitation ... to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101. Based on a plain reading of the TBCC at the time of the conduct arising out of this claim, Chapters 301 and 302 do not apply to text messages. A "telephone solicitor" is defined as one who "makes or causes to be made a consumer telephone call." Tex. Bus. & Comm. Code § 301.001(5). Further, "telephone solicitation" is defined as "a telephone *call* a seller or salesperson initiates to induce a person to purchase, rent, claim, or receive an item." *Id.* *§ 302*.001(7).[2]

Here, Plaintiff fails to plead facts under Rule 8 to support entering a default judgment on his TBCC claim. Plaintiff asserts that he is a resident of Texas. Pl.'s Compl. at ¶7. Defendant is a seller, since Defendant sent the text messages in order to promote its vehicle service contracts. *See* Tex. Bus. & Com. Code § 302.001(5) ("'Seller' means a person who makes a telephone solicitation on the person's own behalf."). Plaintiff also asserts that Defendant is not registered with the Texas Secretary of State, as required by § 302.101. Pl.'s Compl. ¶20. Plaintiff alleges Defendant made each solicitation in this case without holding a valid Texas Telephone Solicitation registration, each unlawful solicitation constitutes a separate violation of the chapter, and the statute provides that a violator is subject to civil penalties of up to $5,000 per violation. Tex. Bus. & Com. Code § 302.302(a). However, Plaintiff does not allege that Defendant called him. Instead, this entire case is centered on text messages sent to Plaintiff by Defendant. While

---

[2] The Court notes that Texas has amended Tex. Bus. & Com. Code § 302.001(7) to include text messages effective September 1, 2025. TEX. BUS. & COM. CODE. ANN. § 302.001 (West 2025). However, all communications in this case are alleged to have occurred before September 1, 2025.

the Texas Legislature amended the TBBC to include text messages effective September 1, 2025, *see* TEX. BUS. & COM. CODE. ANN. § 302.001 (West 2025), all communications in this case are alleged to have occurred before September 1, 2025. Therefore, the Court finds that Plaintiff is not entitled to default judgment on his Section 302.101 claims.

### E.  Entitlement to Damages

Plaintiff seeks relief against Defendant under the TCPA, 47 U.S.C. § 227, and regulations promulgated thereunder, and TBCC §§ 302.101 and 305.053. In determining the amount of damages to be awarded, the Court may rely on declarations and documentary evidence if the amount claimed is capable of mathematical calculation. *See* Fed. R. Civ. P. 55(b)(2)(B). The amount of damages available to Plaintiff is capable of mathematical calculation, and Plaintiff has provided these calculations in his original complaint, Motion for Default Judgment, and attached affidavit.

In his complaint, Plaintiff requested "[a]n award of $1,500 per text message in statutory damages arising from § 227(c) for each intentional violation" Pl.'s Compl. at 8, and "[a]n award of $5,000 in statutory damages arising from each violation of the Texas Bus. & Com. Code § 305.053," *id.*, and "[a]n award of $5,000 in statutory damages arising from each violation of the Texas Bus. & Com. Code § 302.101." *Id.* Later, in his Motion for Default Judgment, Plaintiff requested $3,000 for two violations of the TCPA, 47 U.S.C. §227(c)(5)(C) at $1,500 per violation, $3,000 for two violations of Texas Bus. & Com. Code § 305.053(c) at $1,500 per violation, and $10,000 for two violations of Texas Bus. & Com. Code § 302.302(a) at $5,000 per violation. Motion, 6.

First, the TCPA authorizes a private right of action under 47 U.S.C. § 227(c)(5) for a person who receives more than one telephone call or text message within a twelve-month period

17

by or on behalf of the same entity in violation of the Commission's Do-Not-Call regulations. 47 U.S.C. § 227(c)(5). A prevailing plaintiff may recover actual damages or statutory damages of $500 for each violation, with treble damages available for willful or knowing violations. 47 U.S.C. § 227(c)(5)(B). Courts have recognized that repeated unlawful calls may give rise to multiple statutory awards under § 227(c). *See Guadian*, 2024 WL 140249, at *6–7. Here, the Court recommends awarding $1,000 for the two text messages under TCPA § 227(c)(5)(c).

Second, TBCC § 305.053 authorizes a private right of action for a person who receives a communication in violation of 47 U.S.C. §227. Tex. Bus. & Com. Code § 305.053(a). A prevailing plaintiff may recover actual damages or statutory damages of $500 for each violation, with treble damages available for knowing or intentional violations. *Id.* § 305.053 (b)-(c). However, courts have repeatedly found "there is no basis to award" damages per call under both the federal and state provisions. *Masters v. Wells Fargo Bank S. Cent., N.A.*, No. A-12-CA-476-SS, 2013 WL 3713492, at *3 (W.D. Tex. July 11, 2013) ("There is no indication in either the TCPA or in Texas's analogue that either legislative body intended to allow double recovery under both state and federal law for the same TCPA violations."); *see also Shields v. Gawk Inc.*, No. 3:18-CV-00150, 2019 WL 1787781, at *5 (S.D. Tex. Apr. 24, 2019) ("Because Shields has already been awarded $500 for Weaver's violations of [§] 227(b), he is not entitled to any additional . . . damages for the corresponding violation of [§[ 305.053."). Therefore, this Court does not recommend Plaintiff be awarded damages for TBCC § 305.053 violations.

Third, Texas law provides additional, independent remedies for the same conduct prohibited by the TCPA. Chapter 302 of the TBCC authorizes a civil penalty of up to $5,000 for each unlawful telephone solicitation, including solicitations made without the required registration under § 302.101. Tex. Bus. & Com. Code §§ 302.101, 302.302(a). Although §

302.101 does not itself create a private right of action, § 302.303 expressly authorizes private enforcement of Chapter 302 violations. Tex. Bus. & Com. Code § 302.303(b); *see also Auguston v. Nat'l Admin. Serv. Co.*, No. 4:21-CV-819-ALM-KPJ, 2023 WL 1810397, at *8 (E.D. Tex. Jan. 11, 2023), *report and recommendation adopted*, 2023 WL 1802389 (E.D. Tex. Feb. 7, 2023). Courts within this Circuit routinely permit recovery under both § 227(c) and Chapter 302 for the same telemarketing conduct. *See Thomas v. Zenith Solar, LLC*, No. MO:22-CV-00047-DC-RCG, 2022 WL 17813168, at *4 (W.D. Tex. Aug. 1, 2022), *report and recommendation adopted*, 2022 U.S. Dist. LEXIS 202853 (W.D. Tex. Aug. 24, 2022); *Thompson v. Dealer Renewal Servs.*, No. 4:21-CV-0467-P, 2021 WL 5416605, at *3 (N.D. Tex. Nov. 18, 2021). Because each unlawful call is a separate violation, multiple solicitations may support cumulative statutory damages under both § 227(c) and Texas law. Tex. Bus. & Com. Code §§ 302.001(7), 302.002, 302.302(a). Under Texas law, each telephone solicitation constitutes a separate violation, and a violator is subject to civil penalties of up to $5,000 per violation. Tex. Bus. & Com. Code §§ 302.001(7), 302.002, 302.302(a) (2025). Accordingly, placing one call to Plaintiff exposes the sender to $5,000 in Texas civil penalties. *Id*. However, because Plaintiff does not allege that Defendant called him, instead only alleging two text messages were sent to him, this Court does not recommend Plaintiff be awarded damages for TBCC § 302.101 violations.

Lastly, Plaintiff seeks an award of reasonable attorney's fees. Motion, 10. Plaintiff may recover "all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees." Tex. Bus. & Com. Code § 302.302(d). As a result, the Court recommends that Plaintiff's counsel be ordered to submit an itemized invoice or documentation of Plaintiff's attorney's work on this matter.[3]

---

[3] "[P]laintiffs seeking attorney's fees are charged with the burden of showing the reasonableness of the hours billed and, therefore, are also charged with proving that they exercised billing judgment. Billing

## F. Permanent Injunction

Injunctive relief is available under the TCPA. *See* 47 U.S.C. § 227(c)(5)(A). Here, the complaint seeks an order "prohibiting Defendant from making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry." Pl.'s Compl., ¶38. It does not allege facts to show a realistic likelihood of a future TCPA violation by Defendant, however. *See Posada*, 716 F.2d at 1070. There are no allegations that Plaintiff has received a call or text from Defendant since the last May 20, 2025 text he received. *See Shields*, 2019 WL 1787781, at *6, ("With no imminent threat of repeated violations of the TCPA and/or Section 305.053, the Court sees little reason to invoke its equitable powers and impose permanent injunctive relief."). Accordingly, Plaintiff's request for a permanent injunction is not appropriate and should be denied.

## IV.    CONCLUSION and RECOMMENDATION

For all these reasons, the Court hereby **RECOMMENDS** that Plaintiff's Motion for Default Judgment (ECF No. 18) be **GRANTED in part, and DENIED in part**.

The Court **FURTHER RECOMMENDS** damages be awarded in the amount of $1,000.

The Court **FURTHER RECOMMENDS** that Plaintiff's counsel be ordered to submit documentation of the hours Plaintiff's Attorney worked on the matters in this case.

The Court **FURTHER RECOMMENDS** that Plaintiff's request for a permanent injunction be **DENIED**.

---

judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006) (footnote omitted).

So **RECOMMENDED** and **SIGNED** this 29th day of May 2026.

_____
MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE

### NOTICE

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**